IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PREVOR,<br>Moulin de Verville<br>95760 Valmondois – France,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES FOOD<br>AND DRUG ADMINISTRATION,<br>200 Independence Avenue, S.W.<br>Washington, DC 20201,<br><br>    Defendant. | Case No. 1:13-cv-01177 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff PREVOR avers and alleges as follows:

**NATURE OF ACTION**

1. On September 25, 2012, the Honorable Rosemary M. Collyer issued an 18-page Opinion that found that the United States Food and Drug Administration ("FDA") "acted arbitrarily and capriciously in designating [Diphoterine Skin Wash ("DSW")] as a drug-device combination product with a drug primary mode of action." *Prevor v. Food and Drug Admin.*, 895 F. Supp. 2d 90 (D.D.C. 2012). The Court vacated FDA's decision and ordered FDA to issue a new decision "consistent with this Opinion." *Id.* at 101.

2. Eight months later, on May 24, 2013, FDA finally acted. FDA's decision was wholly inconsistent with the Court's Opinion, and it was otherwise contrary to law

1

and arbitrary and capricious.

3. PREVOR seeks declaratory and injunctive relief to vacate FDA's May 24, 2013 decision. Prevor asks that this Court declare that DSW is, and should be regulated as, a "device."

## PARTIES

4. Plaintiff PREVOR is a corporation duly organized and existing under the laws of France, with its principal place of business in Moulin de Verville, Valmondois F-95760, France. PREVOR has worked for over 50 years to investigate and develop methods to avoid risks associated with the use of chemical products. PREVOR developed DSW to help prevent and minimize accidental chemical burn injuries to workers exposed to hazardous chemicals.

5. Defendant FDA is an agency within the U.S. Department of Health and Human Services, an Executive Department of the United States government.

## JURISDICTION AND VENUE

6. This action arises under the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et. seq., the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-559, 701-706, and 28 U.S.C. §§ 1361, 2201-2202. The declaratory, injunctive, and other relief requested by Plaintiff is authorized by 5 U.S.C. §§ 702 and 706, and 28 U.S.C. §§ 1361, 1651, 2201-2202, and this Court's general equitable powers.

7. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1361.

8. This Court has personal jurisdiction over FDA because it resides within this

District.

9. Venue is proper under 28 U.S.C. § 1391(e).

## STATUTORY AND REGULATORY BACKGROUND

10. The FDCA defines a "device" as an instrument, apparatus, implement, machine, or other similar or related article, which is, among other things:

    a. intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease,

    b. which does not achieve its primary intended purposes through chemical action within or on the body of man or other animals, and

    c. which is not dependent upon being metabolized for the achievement of its primary intended purposes. 21 U.S.C. § 321(h).

As the Court explained, the "critical distinguishing element applicable in this case is that a product that 'achieve[s] its primary intended purposes through chemical action within or on the body' is excluded from the definition of a device." *Prevor*, 895 F. Supp. 2d at 93.

11. The FDCA defines a "drug" as an article "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals." 21 U.S.C. § 321(g).

12. The law recognizes that a product may be both a drug and a device, termed a "combination product." 21 U.S.C. § 353(g). A drug-device combination product is regulated as a drug or a device, and assignment to a specific agency component will determine the regulatory requirements for that product and the cost of approval. *See*

3

*Prevor*, 895 F. Supp. 2d at 93.

13. To determine how to regulate a combination product, FDA identifies the "mode of action" of each component part of the product, and then determines which component part constitutes the "primary mode of action" for the combination product as a whole. A product's "primary mode of action" is the mode of action that provides the most important therapeutic action of the combination product, meaning that it is expected to make the "greatest contribution" to the overall intended therapeutic effects of the product. 21 C.F.R. § 3.2(m).

14. A component part has a "device" mode of action if it meets the statutory definition of a "device" in the FDCA. *Id.* § 3.2(k)(2). A component part has a "drug" mode of action if it meets the definition of a drug contained in the FDCA, and if it has neither a device mode of action nor a biological product mode of action. *Id.* § 3.2(k)(3).

15. If it is not possible to determine with reasonable certainty which mode of action provides a greater contribution than any other mode of action to the overall therapeutic effect, FDA will assign the product to the FDA Center that regulates other products that present "similar questions" of safety and effectiveness. *Id.* § 3.4(b).

## FACTUAL BACKGROUND

16. DSW consists of a liquid substance contained within its own cartridge inside a canister. DSW is propelled by pressurized gas from the canister nozzle once the canister is activated. It is an odorless, colorless liquid comprised of approximately 96% water and 4% diphoterine, a water-soluble molecule.

17. PREVOR developed DSW to minimize the damage caused by chemical

burn injuries that occur in the industrial workplace due to accidental exposure to chemicals.  It works in two ways: first and foremost by physically and mechanically removing or washing away the offensive substance from the skin, and secondly by rendering inert the acids and bases that are not physically washed off the skin.

18. On August 13, 2009, Plaintiff submitted a Request for Designation ("RFD") to FDA's Office of Combination Products ("OCP") requesting that FDA determine that DSW is a device, that its primary mode of action is that of a device, and that it should be regulated as a device.  As part of this RFD, Plaintiff submitted data and information that demonstrate that DSW does not achieve its primary intended purposes through chemical action, and is thus not a drug.  Plaintiff also provided examples of products with similar modes of action and intended use that FDA regulates as devices, including, but not limited to, Reactive Skin Decontamination Lotion ("RSDL"), a device intended to remove and neutralize chemicals from the skin, and Medical Maggots.

19. OCP wrongly concluded that DSW is a combination product for which the "drug" component provides the primary mode of action.  Letter from Thinh Nguyen, Director for Office of Combination Products, to Jeffrey N. Gibbs (Oct. 16, 2009) ("OCP Letter").

20. PREVOR promptly requested reconsideration by FDA's Office of Special Medical Programs ("OSMP"), providing further information to support a "device" classification.  On April 25, 2011, OSMP affirmed OCP's decision.  Letter from Jill Hartzler Warner, FDA Acting Assoc. Comm'r for Special Medical Programs, to Jeffrey N. Gibbs (Apr. 25, 2011) ("OSMP Letter").

21. On June 28, 2011, Plaintiff filed a Complaint claiming that Defendant had violated applicable law in connection with FDA's October 16, 2009 and April 25, 2011 rulings. Complaint, *Prevor v. FDA*, No. 1:11-cv-01187-RMC (Dkt. 1).

22. On September 25, 2012, the Court agreed that FDA acted unlawfully in designating DSW as a drug-device combination product with a drug primary mode of action. *Prevor v. FDA*, 895 F. Supp. 2d 90 (D.D.C. 2012). The Court remanded the case to Defendant for further action consistent with the Court's opinion, and "without resort to its extra-statutory interpretations." *Id.* at 101.

23. Specifically, the Court rejected "FDA's substitution of a new expansive interpretation from the statutory term 'device,'" when it used the terms "at least in part" or "even in part" in its analysis of why DSW was not a device. *Id.* at 98. The Court determined that there was "no reasoned basis to interpret the statute's demand for 'primary intended purposes' to include even 'partial' purposes." *Id.* at 99.

24. The Court also concluded that FDA acted arbitrarily and capriciously by treating DSW differently from analogous products that FDA regulates as devices. The Court found that like DSW, RSDL contains a chemical that counteracts chemicals that come in contact with the skin, and like DSW, the liquid is applied with a device (a sponge). FDA regulates RSDL as a device. The Court reviewed the "almost identical roles played by the device (sponge) in RSDL and the device (canister) in DSW," and described FDA's attempt to explain a difference as "a most ephemeral distinction." *Id.* at 100.

25. In remanding the action to FDA, the Court instructed that FDA could not

treat "*any* purpose of DSW as a *primary* intended purpose, contrary to the more limited language of the statute and the agency's distinction between primary and secondary in prior precedent." *Id.* at 100.  The Court also told FDA that it could not treat "achievement *even in part* of *any* purpose through chemical action as achievement of a primary intended purpose through chemical action." *Id.*

26. FDA took almost eight months to issue a decision, and did so only after PREVOR sought court intervention to compel FDA to act quickly or by a date certain. Motion to Compel, *Prevor v. FDA*, No. 1:11-cv-01187-RMC (Dkt. 28) (Mar. 27, 2013). But on May 24, 2013, FDA finally issued a letter in which it reached the same conclusion as its earlier OCP and OSMP Letters, namely that DSW is a combination product that is to be regulated as a drug.  Letter from Jill Hartzler Warner, FDA Acting Assoc. Comm'r for Special Medical Programs, to Jeffrey N. Gibbs (May 24, 2013) ("Remand Letter"). The Remand Letter mentions the Court Opinion as part of the chronology, but never references the Opinion in applying the FDCA or evaluating DSW's regulatory classification.  FDA concluded that DSW should be regulated as a drug because the solution component of DSW has a "drug" mode of action.  FDA reached this conclusion by flouting the Court's Opinion, ignoring the evidence in the record, reversing its prior positions, misapplying the FDCA, and otherwise acting arbitrarily and capriciously in violation of the APA.

27. In the Remand Letter, FDA acted arbitrarily and capriciously when it ignored the Court's instruction defining what "primary" means in the scope of the statutory definition of a "device."  FDA claimed it erred in earlier decisions about DSW

7

when ascribing <u>two</u> primary intended purposes to DSW.  FDA decided for the first time in the Remand Letter that DSW has a <u>single</u> intended purpose ("to help prevent and minimize accidental chemical burn injuries").  This new incorrect position was directly contrary to FDA's earlier statements that the product has multiple primary intended purposes, as set forth in the OCP Letter, the OSMP Letter, and its briefs filed in this litigation.  Indeed, the Court's Opinion repeatedly references DSW as having multiple primary purposes based on the record.

28.     FDA acted arbitrarily and capriciously by applying new interpretations of law to DSW, and specifically ignored the Court's instruction to apply the "device" definition "without resort to its extra-statutory interpretations."  FDA concluded that the chemical action in DSW "meaningfully contributes" to the product's primary intended purpose, and therefore excludes it from the "device" definition.  Nowhere in the legislative history or statute did Congress provide for FDA to apply a "meaningfully contributes" standard in determining what is a primary intended purpose.  Neither do FDA's regulations and guidance make any mention of this standard.  As the Court noted in rejecting FDA's use of the "even in part" and "at least in part" modifiers, the "addition of such language when applying the statute substantively modified the standard to be applied by expanding the reach of the exclusionary language." *Prevor*, 895 F. Supp. 2d at 99.

29.     FDA unlawfully introduced another new concept not contained in the FDCA, or in FDA's regulations, guidance, or earlier classification decisions.  Specifically, FDA claimed without citing any legal support that "if a product meets the

drug definition but there is uncertainty about whether it also meets the device definition, the Agency generally classifies the product as a drug." Remand Letter, at 4.  In contrast, FDA regulations provide that if it is not possible to determine with reasonable certainty which mode of action provides a greater contribution than any other mode of action to the overall therapeutic effect, FDA is supposed to assign the product to the Center that regulates other products that present "similar questions" of safety and effectiveness.  21 C.F.R. § 3.4(b).  FDA has created a new presumption of drug status that is inconsistent with the law, and did so without the notice and comment required by the APA.

30. FDA also ignored the Court's instruction that FDA "must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so." *Prevor*, 895 F. Supp. 2d at 99.  As the Court noted, FDA made "a most ephemeral distinction" in its earlier decisions regarding the marked similarities between RSDL and DSW.  In the Remand Letter, FDA unsuccessfully made a strained attempt to distinguish RSDL from DSW, but also disclaimed that it "may have erred" in its decision on RSDL.  Remand Letter, at 19-20.  FDA stated that "[i]f RSDL was reviewed today," FDA would reach a different conclusion, thus highlighting the changed standard FDA now seeks to apply without going through the strictures of the APA.

31. FDA similarly backtracked on its classification of Medical Maggots as a device, claiming that it was a "highly unusual" product in which FDA wrongly interpreted the statute.  FDA also overlooked the other multitude of examples PREVOR cited, including: solutions for the management of wounds, artificial saliva, catheter lock flush solutions, solutions for rinsing preserved organs, sterile water for inhalation, dental

prophylaxis pastes with fluoride, intraocular fluids, personal lubricants, and resorbable bone void fillers.

32. In its Remand Letter, FDA unsuccessfully sought to justify its approach by asserting "data provided about how a product works are typically limited." Remand Letter, at 3. FDA did not acknowledge that the limited data is in large part due to the 15-page limit for an RFD, which FDA has established by regulation and rigorously enforces. 21 C.F.R. § 3.7(c)  By restricting the data Prevor could submit, but then by evaluating additional data outside of Prevor's RFD without giving Prevor a chance to respond, FDA has acted arbitrarily and capriciously and otherwise in violation of law.

33. FDA also ignored the Court's instruction to explain its conclusions rather than simply providing its mere say-so that DSW achieves its primary purpose through chemical action, particularly when the record clearly shows DSW acts physically to displace chemicals from the skin.

34. FDA acted arbitrarily and capriciously by rejecting the studies that Prevor submitted in support of its RFD.  Nowhere in the OCP Letter did FDA object to the methodology of those studies.  Thus FDA never provided Prevor any opportunity to explain or provide further information to FDA.  The only reference in the OSMP Letter that FDA made about the studies was in a summary form contained in a footnote, again providing Prevor with no indication of any FDA objection to the methodology.  During a January 15, 2013 meeting with Prevor after the Court's decision, FDA never raised any issues about the studies.  By raising new issues without prior notice, FDA acted arbitrarily and capriciously and has not provided due process.

10

35. FDA violated the FDCA and its own regulations in concluding that the solution component of DSW has a "drug" mode of action. The regulations state that a constituent part of a combination product can have a "drug" mode of action as long as it does not also have a "device" mode of action. 21 C.F.R. § 3.2(k)(3). Because it is not in dispute that DSW has a device mode of action (the physical removal of a liquid off the skin), FDA should not have concluded that DSW has a drug primary mode of action.

## PLAINTIFF'S CLAIMS FOR RELIEF

### Count I
### (FDA Acted Arbitrarily and Capriciously In Violation of the APA)

36. The allegations in paragraphs 1-35 are incorporated herein by reference.

37. FDA applied new legal criteria for determining the regulatory classification of DSW, without complying with the APA requirements for establishing new rules of general applicability. Further, FDA reached its conclusion in the Remand Letter by ignoring the evidence in the record, reversing its prior positions, and misapplying the law.

38. For the foregoing reasons, FDA's conduct was arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, in excess of authority granted by law, without observance of procedure required by law, and in violation of procedural due process.

### Count II
### (Disparate Treatment)

39. The allegations in paragraphs 1-35 are incorporated herein by reference.

40. Defendant failed to apply the same standards that have been applied to similar sponsors and to similar products. Not only should regulatory precedent have

informed the decision to designate DSW as a device, it is a regulatory basis for forming jurisdictional determinations under 21 C.F.R. §§ 3.4(b) and 3.7(c)(3). As a legal, regulatory, and scientific matter, DSW should have been regulated in the same manner as similar products, *i.e.*, as a device.

41. Defendant's decision to disregard precedent and to disparately treat Plaintiff and DSW was arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, in excess of authority granted by law, without observance of procedure required by law, and in violation of procedural due process.

### Count III
### (Action Not in Accordance with FDCA)

42. The allegations in paragraphs 1-35 are incorporated herein by reference.

43. Defendant erroneously concluded that the DSW liquid meets the "drug" FDCA definition, and that DSW has a "drug" primary mode of action. Proper application of the FDCA and its regulations would have resulted in a conclusion that the product should be regulated as a device because it does not achieve its primary intended purposes through chemical action.

44. Defendant's decision was arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, in excess of authority granted by law, and without observance of procedure required by law.

### Count IV
### (Failure to Comply With Court's Order)

45. The allegations in paragraphs 1-35 are incorporated herein by reference.

46. The Court made clear that FDA had acted improperly in reaching its

original decision. FDA's Remand Letter flouts the Court's instructions, violates the law of the case, and ignores the guidelines the Court set.

47. For the foregoing reasons, Defendant's decision to disregard the Court's ruling was arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, in excess of authority granted by law, and without observance of procedure required by law.

## **PRAYER FOR RELIEF**

48. WHEREFORE, Plaintiff PREVOR prays that this Court grant the following relief:

    a. Injunctive relief and a Declaratory Judgment that:

        i. Vacates Defendant's finding that DSW's solution is a "drug" under 21 U.S.C. § 321(g) and not a device under 21 U.S.C. § 321(h);

        ii. Vacates Defendant's designation of DSW as a drug-device combination product with a "drug" primary mode of action;

        iii. Declares that Defendant's jurisdictional determination was arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, in excess of authority granted by law, and without observance of procedure required by law; and

        iv. Declares that DSW is a "device," or, in the alternative, that DSW is a drug-device combination product with a "device"

          primary mode of action; or

    v.    In the alternative, remands to FDA with specific instructions that it issue a decision within 30 days that DSW will be regulated as a device.

b.    Award Plaintiff its costs and attorneys' fees.

c.    Grants such other relief as may be just and proper.

Dated: August 1, 2013          Respectfully submitted,

By: __/s/ Anne K. Walsh_____
Jeffrey N. Gibbs (D.C. Bar No. 385294)
John R. Fleder (D.C. Bar No. 176123)
Anne K. Walsh (D.C. Bar No. 464858)
Jennifer M. Thomas (D.C. Bar No. 987518)
Hyman, Phelps & McNamara, P.C.
700 13th Street, N.W., Suite 1200
Washington, D.C. 20005
Phone: (202) 737-5600
Fax: (202) 737-9329

*Attorneys for Plaintiff PREVOR*

14