**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
PREVOR,                                 )
                                        )          Civil Action No. 1:13-cv-01177
                   Plaintiff,           )
                                        )
          v.                            )
                                        )
UNITED STATES FOOD                      )
AND DRUG ADMINISTRATION,                )
                                        )
                   Defendant.           )
_____        )


**PREVOR'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I.      INTRODUCTORY STATEMENT ..........................................................................1

II.     FDA FAILED TO ADDRESS THIS COURT'S DECISION AND
        MISCHARACTERIZES PREVOR'S ARGUMENTS. ...........................................2

        A.   FDA Did Not Address This Court's Decision. ...................................................2

        B.   The Government Has Conceded the Arguments It Failed to Address
             in its Brief. ...........................................................................................................4

III.    FDA FAILED TO SUPPORT ITS NOVEL "MEANINGFULLY
        CONTRIBUTES" STANDARD. ..............................................................................5

        A.   The Phrase "Meaningfully Contributes" Does Not Mean "Achieve."...............5

        B.   FDA's New Policy Cannot Justify the New Standard. ......................................7

        C.   FDA's New "Meaningfully Contributes" Standard Is Fatally
             Flawed. ................................................................................................................11

        D.   FDA Has the Burden to Refute Prevor's Proposed Classification....................13

IV.     FDA STILL CANNOT JUSTIFY WHY IT DID NOT FOLLOW
        OBVIOUS PRECEDENT. ......................................................................................14

V.      FDA'S REMAND RESPONSE IS NOT ENTITLED TO DEFERENCE,
        AND THERE SHOULD BE NO SECOND REMAND. ..................................19

VI.     THE STATUTE DOES NOT CONFER SOLE AUTHORITY ON FDA
        TO DESIGNATE PRODUCTS. .......................................................................23

VII.    DSW IS A DEVICE...................................................................................................26

VIII.   CONCLUSION..........................................................................................................29

# TABLE OF AUTHORITIES

## CASES

*Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166 (D.C. Cir. 2003)..............7

*Alpharma, Inc. v. Leavitt*, 460 F.3d 1 (D.C. Cir. 2006)................................................22

*Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077 (D.C. Cir. 2001)...........................21

*Apotex, Inc. v. Food and Drug Admin.*, No. 06-0627, 2006 WL 1030151
    (D.D.C. Apr. 19, 2006). .......................................................................3, 18, 20

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984).............8

*Cook v. Food and Drug Admin.*, 733 F.3d 1 (D.C. Cir. 2013). ....................................19

*Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000)..........................................................................................25

*Food Mktg. Inst. v. Interstate Commerce Comm'n*, 587 F.2d 1285 (D.C. Cir. 1978). ...4

*Goldstein v. Sec. and Exch. Comm'n*, 451 F.3d 873 (D.C. Cir. 2006). .....................8, 9

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d
    (D.D.C. 2003). ..................................................................................................4

*Indep. Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248 (D.C. Cir. 1996). .................14

*Natural Res. Def. Council v. Envtl. Prot. Agency*, 489 F.3d 1364 (D.C. Cir. 2007) ......9

*Payne v. Salazar*, 899 F. Supp. 2d 42 (D.D.C. 2012). ....................................................4

*PDK Labs. Inc. v. Drug Enforcement Admin.*, 362 F.3d 786 (D.C. Cir. 2004). .............8

*Prevor v. Food and Drug Admin.*, 895 F. Supp. 2d 90 (D.D.C. 2012)................*passim*

*Sanofi-Aventis U.S. LLC v. Food and Drug Admin.*, 773 F. Supp. 2d 162
    (D.D.C. 2010). ........................................................................................ 14-15

*Scripps-Howard Radio, Inc. v. Fed. Commc'ns Comm'n*, 316 U.S. 4 (1942).............24

*Serono Labs., Inc. v. Shalala*, 35 F. Supp. 2d 1 (D.D.C. 1999)...................................15

*Stephenson v. Cox*, 223 F. Supp. 2d 119 (D.D.C. 2002).................................................4

iii

*Tummino v Hamburg*, 936 F. Supp. 2d 162 (E.D.N.Y. 2013). ...............................21, 22

*Tummino v. Torti*, 603 F. Supp. 2d 519 (E.D.N.Y. 2009). ...........................................21

*United States v. Generix Drug Corp.*, 460 U.S. 453 (1983). .......................................25

*United States v. Regenerative Sci., L.L.C.*, 878 F. Supp. 2d 248 (D.D.C. 2012)..........25

*United States v. Undetermined No. of Unlabeled Cases*, 21 F.3d 1026
    (10th Cir. 1994)...................................................................................................25

*United States v. Western Serum Co., Inc.*, 666 F.2d 335 (9th Cir. 1982). ...................24

*Watson Labs., Inc. v. Sebelius*, No. 12-1344, 2012 WL 6968224
    (D.D.C. Oct. 22, 2012).......................................................................................22

## STATUTES

21 U.S.C. § 321(h). ..........................................................................................24

21 U.S.C. § 353............................................................................................... 8

21 U.S.C. § 360bbb-2. ..........................................................................11, 14, 23, 24

21 U.S.C. § 393.............................................................................................23, 24

## LEGISLATIVE HISTORY

S. Rep. No. 101-513 (1990). .........................................................................8

## REGULATIONS

21 C.F.R. § 3.2................................................................................................ 8

21 C.F.R. § 3.7..........................................................................................10, 14

## FEDERAL REGISTER

70 Fed. Reg. 49,848 (Aug. 25, 2005).............................................................19

**REFERENCES**

*Achieve Definition*, Oxford English Dictionary Online,
http://www.oed.com/view/Entry/1480?redirectedFrom=achieve (last
visited Jan. 17, 2014)................................................................................6

Merriam-Webster.com: Achieve, http://www.merriam-webster.com/
dictionary/achieve (last visited Nov. 12, 2013)..........................................5

Merriam-Webster.com: Chief, http://www.merriam-webster.com/dictionary/chief
(last visited Jan. 16, 2014)..........................................................................6

Merriam-Webster.com: Hypertonic, http://www.merriam-
webster.com/dictionary/hypertonic (last visited Jan. 17, 2014). ...............26

I.      **INTRODUCTORY STATEMENT**

This Court's earlier remand ruling instructed the Food and Drug Administration (FDA) to: (1) make its determination "consistent with this Opinion," and (2) do so "without resort to its extra-statutory interpretations."  *Prevor v. Food and Drug Admin.*, 895 F. Supp. 2d 90, 101 (D.D.C. 2012) [hereinafter "*Prevor I*"].  FDA's May 24, 2013 decision failed both requirements. Letter from Jill Hartzler Warner, Office of Special Medical Programs, FDA, to Jeffrey N. Gibbs, Hyman, Phelps & McNamara, P.C. (HPM), A.R. 839-59 [hereinafter "Remand Response"].

The government's Opposition Brief does nothing to repair the central legal deficiencies in FDA's Remand Response, and instead is replete with improper *post hoc* rationalizations.  The government cannot alter the fact that FDA did not anchor its Remand Response to this Court's ruling.  Rather, FDA was able to reach its classification decision only by creating and applying to Diphoterine Skin Wash (DSW) another new standard.

The Court ordered FDA to issue a new decision that did not result in an expansion of the statute.  But FDA continued to rely on an extraordinarily expansive interpretation when it substituted the words "meaningfully contributes" for the word "achieve" that is used in the exclusionary clause of the device definition.  The government's brief does not contest that the word "achieve" is in the statute.  The government also does not contest that the words "meaningfully contributes" are not in the statute, FDA's regulations, or earlier classification decisions.  Instead, the government's Opposition Brief tries to accomplish by assertion what the Remand Response failed to accomplish by analysis:  the brief simply asserts that "meaningfully contributes" is interchangeable with "achieve," with no citation to support that proposition. Opp'n Br. at 10.  Prevor's brief analyzes the word "achieve" based on its plain meaning, statutory context, and legislative intent; FDA's interpretation changes the word "achieve" to mean something entirely different than what Congress enacted.

1

Further, FDA applied flawed logic first to obtain and then to try to insulate its preordained result that DSW should be regulated as a drug.  For example, the government's Opposition Brief cites to FDA's Remand Response, which cites to the existence of secret documents to which no one but FDA is privy, all to disguise the weaknesses in FDA's argument.

This Court has the authority to declare that DSW is a device, and the government provided no proper basis to dispute this legal conclusion.  Accordingly, Prevor requests that this Court grant Prevor's Motion for Summary Judgment, deny the government's motion, and order that DSW be classified a device to be regulated by FDA's Center for Devices and Radiological Health (CDRH).

II.   **FDA FAILED TO ADDRESS THIS COURT'S DECISION AND MISCHARACTERIZES PREVOR'S ARGUMENTS.**

   A.   **FDA Did Not Address This Court's Decision.**

The government asserts that FDA's task on remand was not to cite the Court's Opinion on every page.  Opp'n Br. at 3 n.3.  Prevor, though, never stated FDA was legally required to do so.  Instead, Prevor's position was, and remains, that FDA should have thoroughly discussed the Court's findings and ruling *somewhere* in the Remand Response.  Prevor Br. at 1.  Other than acknowledging on the first page that the Court had remanded the case, FDA's Remand Response utterly failed to mention, let alone discuss, a single finding made by the Court when it remanded this case.  For example, the Court criticized FDA for using "extraordinarily expansive" language. *Prevor I*, 895 F. Supp. 2d at 97.  Yet, the Agency has again failed to specify exactly how its new standard would not expand the exclusionary clause far beyond what Congress enacted.  Given the explicit and detailed findings of the Court, it is telling that FDA never explained how the Remand Response addressed and adhered to the Court's Opinion.

2

FDA knows how to properly tie a decision on remand to the legal findings that precipitated the remand.  Indeed, the remand decision FDA issued in *Apotex, Inc. v. Food and Drug Admin.*, No. 06-0627, 2006 WL 1030151 (D.D.C. Apr. 19, 2006), a ruling on which the government heavily relies (*see* Opp'n Br. at 11, 12, 13, 18, 24, 33), provides a stark contrast to the remand decision FDA issued here.  *See* Letter from Gary Buehler, Office of Generic Drugs, FDA, to Apotex Corp. (Apr. 11, 2006) (attached hereto as Exhibit 1).  There, FDA issued a remand decision that contained a substantial discussion of the earlier court rulings that preceded FDA's remand decision.  For instance, FDA stated (and indeed demonstrated) that "FDA is independently interpreting the statute in accordance with the direction of the *Teva III* court."  *See* Exhibit 1, at 11.  There is, of course, no similar statement or showing in FDA's Remand Response on DSW (nor any indication that FDA followed the directions of the Court).  Instead, FDA simply asserted that it had reconsidered "in light of the judicial opinion," Remand Resp. at 1, A.R. 839, and then failed to conduct any further analysis.[1]

Moreover, the government's brief mischaracterizes the actions FDA took in the Remand Response.  For example, the brief states that FDA "reassessed its interpretation, keeping in mind the instruction that 'primary' means 'principal, first among others, foundational.'"  Opp'n Br. at 8.  Yet, nowhere in its Remand Response did FDA reference this "reassessment," and indeed, this is not what FDA actually did.  Rather, FDA avoided any analysis of primacy, by completely reversing course.  Originally, FDA said that DSW had two intended purposes, and that the drug intended purpose was primary; now, FDA has said that DSW has only a singular intended

---

[1]     The government makes the sweeping statement that "[FDA] then proceeded to explain how it re-analyzed the issues consistent with the Court's opinion."  Opp'n Br. at 3 n.3.  Yet in the *twenty pages* of the Remand Response that the government's brief cites in support of its statement, this Court's Opinion and findings were not mentioned once, and FDA did not "explain" how its decision was at all consistent with the Court's Opinion.

3

purpose, which is then, *a fortiori*, primary.  Remand Resp. at 5, A.R. 843.  The government's

brief also describes the scope of FDA's review as "comprehensive," "detailed," and based on

"voluminous" science (Opp'n Br. at 3, 17, 23), when in fact the administrative record provides

no evidence to support these inflated descriptions.

Finally, the government mischaracterizes Prevor's position faulting FDA simply because

it reached the same result in classifying DSW.  *See id*. at 3 n.3.  Prevor does not contend that this

Court *required* FDA to reach a different result.  Rather, Prevor's position remains that FDA's

ruling should not be given deference because, among other things, FDA reached the same

preordained result, using similar logic, while ignoring this Court's findings and Prevor's

arguments.  As the D.C. Circuit has warned, there is clear danger that when an agency has

reached a particular result, it may be so committed to that result as to resist engaging in any

genuine reconsideration of an issue.  *See Food Mktg. Inst. v. Interstate Commerce Comm'n*, 587

F.2d 1285, 1289-90 (D.C. Cir. 1978).  That is exactly what happened here.

### B.    The Government Has Conceded the Arguments It Failed to Address in its Brief.

As discussed below, the government fails to address numerous arguments Prevor set forth

in its Opening Brief.  The Court should treat these arguments as having been conceded.  "[W]hen

a plaintiff files an opposition to a dispositive motion [that] addresses only certain arguments

raised by the defendant, a court may treat those arguments that the plaintiff failed to address as

conceded."  *Payne v. Salazar*, 899 F. Supp. 2d 42, 50 (D.D.C. 2012) (quoting *Hopkins v.*

*Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003)); *see also*

*Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002) (reasoning that a court may treat

arguments not addressed in response to a motion as conceded).

III.    **FDA FAILED TO SUPPORT ITS NOVEL "MEANINGFULLY CONTRIBUTES" STANDARD.**

The linchpin of the government's case is FDA's finding that DSW's chemical action "meaningfully contributes" to the product's primary intended purpose, and therefore it is a drug. The "meaningfully contributes" standard is yet another improper "extra-statutory" interpretation of the device exclusionary clause.[2]  The Agency's entire analysis topples when the proper statutory standard is applied.

A.    **The Phrase "Meaningfully Contributes" Does Not Mean "Achieve."**

The phrase "meaningfully contributes" appears nowhere in the Federal Food, Drug, and Cosmetic Act ("FDC Act") or in FDA regulations.  FDA's Remand Response created this language for the first time to try to justify the DSW classification decision.  All of the assertions the government now makes to tie FDA's new standard to the statutory language are articulated for the first time in the government's Opposition Brief.  The original Remand Response never explained the Agency's basis for the use of "meaningfully contributes" in lieu of the word "achieve."  *See* Remand Resp. at 7-8, A.R. 845-46.  In fact, FDA's Remand Response ignored the word "achieve" when it claimed that "through chemical action" was an "unmodified phrase." *Id*. at 7, A.R. 845.

The ordinary and natural meaning of "achieve" is to "accomplish" or "carry out successfully."  Prevor Br. at 16 (citing Merriam-Webster.com: Achieve, http://www.merriam-webster.com/ dictionary/achieve (last visited Nov. 12, 2013)).[3]  FDA's Remand Response did

---

[2]    Courts must narrowly construe statutory exceptions, such as the device exclusionary clause.  *See* Prevor Br. at 10.  The government does not challenge this legal proposition.

[3]    Further, the root of the verb "achieve" is "chief," which means "principal, highest, or first," and connotes "most important," as in "the chief argument," "commander in chief," or "chiefly."  *See* Merriam-Webster.com: Chief, http://www.merriam-webster.com/dictionary/chief (last visited Jan. 16, 2014).

not analyze or define the word "achieve," or address that dictionary definition.[4]  The government

now agrees that "achieves" means "accomplishes," Opp'n Br. at 13, but rather than addressing

that definition, the government concludes, without basis, that "achieves" means "meaningfully

contributes."  *See* Opp'n Br. at 10 ("chemical action achieves, or, *in other words*, meaningfully

contributes to, the product's primary intended purposes") (emphasis added).

     "Meaningfully contributes," however, are not "other words" for "achieves."  In the

relevant language of the device definition, "does not achieve any of its primary intended

purposes through chemical action," the term "achieve" is dependent on "primary intended

purposes."  When the term "achieve" is dependent on a direct object, it means that the direct

object is brought to a successful conclusion, or completed.  *See Achieve Definition*, Oxford

English Dictionary Online, http://www.oed.com/view/Entry/1480?redirectedFrom=achieve (last

visited Jan. 17, 2014) (defining "achieve" as "to carry out successfully, to bring to a successful

conclusion (an action, enterprise, etc.)").[5]  Thus, the definition excludes a product only if the

chemical action successfully completes the primary intended purposes.[6]  The words

---

[4]    In the earlier litigation, this Court faulted FDA for failing to define the term "primary," as used in the exclusionary clause, "in a manner consistent with the law."  *Prevor I*, 895 F. Supp. 2d at 101.  FDA has repeated that error in this case with respect to the statutory word "achieve."

[5]    This Court has previously recognized the Oxford English Dictionary as an authoritative source.  *Prevor I*, 895 F. Supp. 2d at 98-99.

[6]    While it is not Prevor's job to define the words FDA used, logically, "meaningfully contributes" constitutes a *subset* of "achieve."  For example, if a chemical action "achieves" the primary intended purpose, it would also meaningfully contribute to that purpose.  But the opposite is not true.

"meaningfully contributes" do not mean the same thing as the plain language set forth in the statute.[7]

The government makes a series of blanket unsupported assertions that FDA has properly interpreted the device definition.[8]  For example, the brief claims that FDA's new standard "give[s] effect to the statutory language" (Opp'n Br. at 11); "gives proper effect to the reach of the device exclusionary clause" (*id*. at 12); "gave effect to the language of the statute and fulfilled its obligation to reasonably explain how much chemical action is intended by the language" (*id*. at 12-13); and "explain[s] the words in the statute" (*id*. at 13).  The government cites nothing to support these statements, despite the fact that Prevor invited FDA to do so in its Opening Brief.  *See* Prevor Br. at 14.  In fact, it appears the government has abandoned the argument that "meaningfully contributes" is equivalent to a product being "'dependent upon chemical action,' which is how Congress described the meaning of the exclusionary clause."  *See* Remand Resp. at 8, A.R. 846.

**B.      FDA's New Policy Cannot Justify the New Standard.**

The government argues that because the exclusionary clause "does not expressly state how much chemical action suffices for a product to be excluded from the device definition," it is

---

[7]      The government argues that FDA's new standard "does not contravene the plain language of the statute."  Opp'n Br. at 12.  This Court cannot accept an agency interpretation merely because it does not directly contravene the plain language of the statute.  It must "discern[] the boundaries of Congress' delegation of authority to the agency," and determine whether the statute's language and purpose support the meaning the agency would attribute to it.  *See Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1174, 1177-78 (D.C. Cir. 2003).

[8]      As in the earlier litigation, in which the Court concluded that the record demonstrated FDA had changed its interpretation of the device definition, *Prevor I*, 895 F. Supp. 2d at 101, the record again demonstrates that FDA has changed the device definition by employing a new standard, even though the government denies it has done so.

7

ambiguous and leaves a "gap" for FDA to fill.  *See* Opp'n Br. at 10-12.[9]  However, the fact that

the statute does not define "achieve" does not render that word, or the phrase in which it appears,

ambiguous, or leave a gap in the statute.  *See Goldstein v. Sec. and Exch. Comm'n*, 451 F.3d 873,

878 (D.C. Cir. 2006) ("The lack of a statutory definition of a word does not necessarily render

the meaning of a word ambiguous . . . .").  As the D.C. Circuit noted in *Goldstein*:

> As always, the 'words of the statute should be read in context, the statute's place in the overall statutory scheme should be considered, and the problem Congress sought to solve should be taken into account' to determine whether Congress has foreclosed the agency's interpretation.

*Id*. (quoting *PDK Labs. Inc. v. Drug Enforcement Admin*., 362 F.3d 786, 796 (D.C. Cir. 2004)).

An analysis according to these principles shows that FDA's interpretation standard is simply

invalid.[10]

Prevor relies on the words used by Congress – particularly, the word "achieve" – and

employs dictionary definitions and accepted principles of statutory construction to analyze the

ordinary and plain meaning of those words.  Prevor bases its interpretation on that analysis, and

on an analysis of the statutory context and Congress' intent as reflected in legislative history.

Prevor Br. at 10-12, 16-17.

---

[9]     The government's brief cites *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) (Opp'n Br. at 11), and implies that this Court should analyze the case under *Chevron* step two.  The government never contends that FDA's position on DSW is defensible at *Chevron* step one, based on the plain language of the statute.

[10]     The overall statutory and regulatory scheme, including the parallel language used in the exclusionary clause and FDA's required "primary mode of action" analysis (21 U.S.C. § 353(g); 21 C.F.R. § 3.2(m)), weigh strongly against use of FDA's standard.  *See* Prevor Br. at 17.  And Congressional intent to "clarify[ ] the appropriate classification of devices, thus avoiding over-regulation and the needless expenditure of FDA resources," is inconsistent with FDA's position.  *See id*. at 11 (citing S. Rep. No. 101-513, at 13 (1990)).

The government's brief incorrectly asserts that "[n]one of Prevor's interpretations of the device exclusionary clause can be accomplished based solely on the statutory words.  Instead, Prevor's interpretations require that words be added . . . ."  Opp'n Br. at 14.  To the contrary, it is FDA that did not attempt to address the ordinary and plain meaning of "achieve," and neither defined the words it inserted in lieu of "achieve" ("meaningfully contributes"), nor explained how those words could comport with the statute's plain meaning.[11]

The government contends that this Court should accept FDA's "meaningfully contributes" standard in large part because the standard "enables the agency to implement the device exclusionary clause" in the context of the "limited scientific data that is generally before the agency."  Opp'n Br. at 14.  But it is well-settled that FDA's administrative convenience is subordinate to the plain language of the authorizing statute.  *See, e.g.*, *Goldstein*, 451 F.3d at 879-81; *Natural Res. Def. Council v. Envtl. Prot. Agency*, 489 F.3d 1364, 1373-74 (D.C. Cir. 2007) (finding that EPA's convenience and that of the regulated industry did not justify extending statutory compliance dates).  Moreover, the government never explains why this allegedly limited data must result in a standard that defaults to a determination that the product is a drug, rather than a device.

FDA itself, though, has created obstacles to its evaluation of whether a product's primary intended purpose is achieved by chemical action.  The government claims that FDA cannot conduct this analysis because the existing data "are unlikely to definitively identify all of the

---

[11]     FDA asserted, without support, that "whether or not physical displacement is 'predominant' is *not* the standard for determining whether the solution in DSW is a device" (Remand Resp. at 14, A.R. 852) (emphasis supplied), and the government's brief complains that "[h]ad Congress intended that test, it would have included this precise language in the statute" (Opp'n Br. at 15).  Ironically, the government expects this Court to accept FDA's newly coined "meaningfully contributes" test in place of the statutory language.

product's chemical and non-chemical actions, let alone identify whether one action is more important than other actions . . . ." Opp'n Br. at 14. But the government ignores that FDA imposed the very limitations on data of which it now complains, by (1) setting and rigorously enforcing a 15-page limit on Request For Designation (RFD) submissions;[12] and (2) failing to communicate with sponsors and request additional information where necessary to conduct a proper analysis.

Furthermore, the supposed paucity of data has not prevented FDA from regularly evaluating the relative contributions of chemical versus physical action in the context of "primary mode of action" analysis over approximately the last 15 years. *See, e.g.*, FDA Response to Silvaklenz (Jan. 17, 2007), *available at* http://www.fda.gov/downloads/CombinationProducts/ JurisdictionalInformation/RFDJurisdictionalDecisions/RedactedDecisionLetters/UCM113805.pdf (determining that the physical action of the pump-spray and non-drug components of the aqueous solution made the greatest contribution to the overall intended therapeutic effects of the product – *i.e.*, contributed the primary mode of action – as opposed to the antimicrobial and other chemical actions of the drug components). Congress established a statutory scheme whereby FDA must

---

[12]    The arbitrary 15-page limit on the RFD submission severely restricts the ability for fair discourse about a product's classification. As the administrative record makes clear, Prevor's full submission, including its response to four additional questions from FDA, was 14 pages long. A.R. 001-014. Prevor submitted its initial 9.5 page letter to FDA on August 13, 2009. Before accepting the letter for filing as an RFD, FDA sent an e-mail listing four additional questions, with explicit instruction that "your responses cannot exceed 5 pages as there is a 15 page limit specified in 21 CFR 3.7." A.R. 015. Prevor submitted a four page letter the next day. A.R. 019-022. These two letters were attached together, submitted, and filed by FDA as the original RFD package. A.R. 001-014. The government attempts to frame Prevor as being disingenuous when it complained about the burden of meeting the 15-page limitation because it only submitted 9.5 pages in its first letter. FDA Opp'n Br. at 6, n. 4. Had Prevor used its full 15 pages in its first letter, it would have had no opportunity to respond to FDA's additional questions at all. FDA has not faced the same constraints; it has supplemented the record with post-RFD documents.

conduct this analysis at the classification stage, when the Agency is doubtless faced with the same data limitations of which it now complains with respect to DSW. Yet, FDA has not substituted its own extra-statutory test to replace of "primary mode of action" in order to compensate for a putative lack of data.

Finally, and perhaps most important, Congress specifically contemplated what should happen if FDA cannot complete its review under the parameters set forth in the statute, based on data limitations or otherwise:

> If the Secretary does not provide the statement within the 60-day period described in subsection (b) of this section, the recommendation made by the person under subsection (a) of this section shall be considered to be a final determination by the Secretary of such classification of the product, or the component of the Food and Drug Administration that will regulate the product, as applicable, and may not be modified by the Secretary except with the written consent of the person, or for public health reasons based on scientific evidence.

21 U.S.C. § 360bbb-2(c). Thus, Congress intended for the default outcome to be for FDA to accept Prevor's recommendation that the product be regulated as a device. FDA's purported difficulty in "definitively identify[ing]" a product's actions does not justify shifting the burden onto sponsors to affirmatively prove a particular designation, or creating new extra-statutory limitations on what can be a device.

    **C.**    **FDA's New "Meaningfully Contributes" Standard Is Fatally Flawed.**

This Court previously found that FDA failed to provide a reasoned basis on which it could limit its earlier "extraordinarily expansive" interpretation of the statute ("even in part"), because a mere assertion that FDA's "new verbiage would not cover *de minimis* effects" did not suffice. *Prevor I*, 895 F. Supp. 2d at 97. The Agency has repeated this error using different words. FDA's Remand Response attempted to ascribe limitations to the new "meaningfully

contributes" standard by baldly asserting, again, that it will not apply to "*de minimis* or insignificant" chemical action.  Remand Resp. at 8, A.R. 846; Opp'n Br. at 12.

The words "meaningfully contributes" themselves are so subjective that they could encompass even very minor contributions of chemical action to a product's therapeutic effect. *See* Prevor Br. at 15-17, 25.  Not only is there no relevant source for FDA's "meaningfully contributes" standard in the statute or in legislative history, but it does not appear to be defined by FDA or courts in any relevant context.[13]  The only purported limitation on the standard is FDA's assertion that it will not apply to "*de minimis* or insignificant" chemical action.[14]  *Id.* Thus, FDA's new definition is untethered from any objective or external criteria.

This problem is further exacerbated because FDA has eschewed any quantitative analysis of the relative contributions of chemical versus physical action.  *See* Remand Resp. at 8, A.R. 846 (declining to "quantify the relative contribution of the chemical action versus a non-chemical action of a product"); Opp'n Br. at 14 (claiming that FDA is incapable of analyzing "whether one action is more important than other actions or calculate the precise contribution of each action" at the classification stage).

---

[13]     FDA had to be faced with litigation before even articulating that it would not apply the device exclusionary clause to *de minimis* chemical action, Def.'s Brief in Support of Summary Judgment at 28, *Prevor I*, 895 F. Supp. 2d 90, ECF No. 13, and FDA's Remand Response merely proclaimed that FDA would not apply its new standard to *de minimis* chemical action as a matter of course.

[14]     *See also Prevor I*, 895 F. Supp. 2d at 99 (agreeing that FDA's previous "at least in part" language was "so encompassing" that a mere assertion on FDA's part that it would not apply to *de minimis* chemical action — without a reasoned basis for that limitation — was insufficient).   Once again, FDA's remand decision contended that its new broad verbiage would not encompass *de minimis* or insignificant chemical action – but failed to explain the basis for that limitation.

The government claims that this new standard places a "reasonable limit" on application of the exclusionary clause because it precludes instances in which the chemical action is "insignificant."  *See* Opp'n Br. at 12.  Yet FDA failed to offer any explanation of how "insignificance" is determined.  Nor did FDA explain how it would handle a case where chemical action makes an admitted – but comparatively insignificant – contribution to overall therapeutic effect, given the Agency's position that no quantitative analysis of a chemical action's degree of contribution to the overall therapeutic effect is possible.  Remand Resp. at 8, A.R. 846.  Rather, FDA continued to expect this Court, other reviewing courts in the future, and other future applicants, to accept the Agency's mere say-so on whether or not a chemical action rises above FDA's threshold of insignificance.  *Cf. Prevor I*, 895 F. Supp. 2d at 99 (refusing to credit FDA's unsubstantiated mere say-so regarding its interpretation of the exclusionary clause).

Further, whether or not FDA's asserted limit on its application of the exclusionary clause is a "reasonable limit" is dictated by the language of that clause itself.  By FDA's use of "*de minimis* or insignificant" as the only constraint on its new "meaningfully contributes" standard, FDA confirmed that the new standard would permit exclusion from the device definition of products that have anything greater than "*de minimis* or insignificant" chemical action.  This comes nowhere close to reflecting the statutory language, which would exclude only products that "achieve [their] primary intended purposes through chemical action" from the device definition.  "Achieves" and "more than *de minimis*" are not synonyms.

**D.     FDA Has the Burden to Refute Prevor's Proposed Classification.**

The government's Opposition Brief makes clear that in addition to the new standard FDA seeks to apply to its RFD analysis, FDA also has changed the burden of proof for RFD submissions.  The government asserts that because FDA's regulations governing the filing of RFDs place the burden on the sponsor to provide information on how the product works, the

13

burden to demonstrate a particular classification falls on the sponsor.  Opp'n Br. at 6, n. 4.  It provides no legal authority for this statement, because there is none.  Moreover, the government's claim is not supported by the statute, applicable regulations, or even a single cited FDA precedent.

Significantly, the government's argument on this point does not mention the applicable statutory provision regarding FDA's authority to classify, 21 U.S.C. § 360bbb-2.  This statutory provision does not place the burden on the sponsor to demonstrate a particular classification.  Indeed, if anything, the opposite is true.  Congress mandated that the sponsor's proposed recommendation becomes final unless FDA renders a classification decision within sixty days.  Given that the default classification is the one recommended by the applicant, there is no basis for FDA shifting the burden to the applicant.

The government erroneously cites 21 C.F.R. § 3.7(c) to support its argument.  Opp'n Br. at 6 n.4.  It is certainly true that 21 C.F.R. § 3.7 directs a sponsor to request FDA to designate which component of FDA will regulate a product.  The regulation sets forth the information that FDA wants to receive when a sponsor seeks a particular product designation.  However, nothing in that regulation places the burden to demonstrate a particular classification on the sponsor.  There is a fundamental distinction between having the obligation to seek a regulatory classification and having the burden of proving the recommended classification is warranted.

## IV.     FDA STILL CANNOT JUSTIFY WHY IT DID NOT FOLLOW OBVIOUS PRECEDENT.

This Court instructed FDA to "treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so."  *Prevor I*, 895 F. Supp. 2d at 99 (quoting *Indep. Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1258 (D.C. Cir. 1996)).  The Court even directed FDA to *Sanofi-Aventis U.S. LLC v. Food and Drug Admin.*, 773 F. Supp. 2d 162, 172

14

(D.D.C. 2010), in which the administrative record was filled with robust bases for determining that enoxaparin should be treated differently than the drugs cited by Sanofi-Aventis.

FDA claimed that it is "prohibited from disclosing the details" of its "numerous" other decisions that would allegedly support the standard it now imposes on DSW, but failed to cite even a single decision.  Remand Resp. at 19 n.32, A.R. 857.[15]  The government's Opposition Brief continues to invoke these purportedly secret documents, claiming that while the Office of Combination Products has made numerous classifications that are similar to the decision on DSW, "FDA is generally prohibited from disclosing the details of these other decisions because they reflect trade secret and/or confidential commercial information . . . ."  Opp'n Br. at 29 n.26.[16]

There are, of course, many procedures that federal governmental agencies use to handle confidential information.  For instance, FDA could have included redacted versions of its classification decisions as part of the administrative record, or quoted non-trade secret or confidential excerpts from those documents.  *See, e.g. Serono Labs., Inc. v. Shalala*, 35 F. Supp. 2d 1 (D.D.C. 1999) (requiring FDA to purge the administrative record of trade secrets before filing with the court, but to provide the court and all parties with a log describing the purged materials in sufficient detail to permit challenge).   But it did not do any of these things here.

---

[15]    Even with respect to these decisions, FDA did not contend that they demonstrate prior use of the "meaningfully contribute" standard FDA applies to DSW.  Remand Resp. at 19, A.R. 857.  Rather, FDA stated that they involved instances in which a product "worked through chemical action, even if it also worked through physical action."  *Id*. This may represent FDA's application of a different standard ("worked through") altogether.

[16]    The government may respond that the publicly available RFD letters all relate to cleared or approved products, and that FDA continues to withhold RFD letters for as-yet unapproved or uncleared products.  Whether or not that is the case, FDA has not asserted that in any of the approximately 55 RFD letters released since 1996 has FDA used "meaningfully contributes" in determining whether a product is a device.

15

In fact, FDA just last week disclosed a packet of redacted RFD letters in response to a Freedom of Information Act request.  *See* Letter from Kristina J. Lauritsen, FDA, to Jennifer M. Thomas, HPM, Jan. 10, 2014 (attached hereto as Exhibit 2).  Prevor's counsel requested FDA to disclose classification decisions since 2007 that resulted in assignment of the product to CDRH. It took over two years, but FDA ultimately released eleven letters with the following caveat: "Certain material has been deleted from the records furnished to you because a preliminary review of the records indicated that the deleted information is not required to be publicly disclosed and that disclosure is not appropriate. FDA has taken this approach to facilitate the process of responding to you."  *See id*.

FDA cannot legitimately claim it lacks methods for dealing with transparency in the face of confidential information relating to jurisdictional issues.  For example, FDA's Tissue Reference Group (TRG) regularly publishes information about jurisdiction over products composed of human cells, tissues, and cellular and tissue-based products.  The TRG publishes annual updates of its jurisdictional recommendations, and does so in a general way "to avoid revealing confidential information protected from disclosure."  *See* TRG, FDA, http://www.fda.gov/biologicsbloodvaccines/tissuetissueproducts/regulationoftissues/ucm152857. htm (last visited Jan. 16, 2014).

Strikingly, FDA's stated policy on RFDs is dramatically opposed to its approach here. On FDA's Combination Products website, http://www.fda.gov/CombinationProducts/ JurisdictionalInformation/RFDJurisdictionalDecisions/RedactedDecisionLetters/default.htm, FDA touts it ability to provide redacted jurisdictional decisions:

> The Agency believes it is very important to provide robust transparency in jurisdictional decision making. Such transparency should result in greater predictability and consistency of decisions, and decrease ambiguity and uncertainty about Agency

> perspectives. Moreover, as the basis for Agency decision making
> becomes clearer, the need for formal Requests for Designation
> (RFD's) and informal inquiries covering the jurisdiction for
> specific products may be diminished, which should help to
> conserve resources for both industry and the Agency.
>
> To this end, once the product covered by an RFD has been
> approved or cleared, the Office of Combination Products (OCP)
> will ordinarily post on this website its written jurisdictional
> determination respecting the RFD, redacted to remove trade secret
> and confidential commercial information in accordance with the
> Freedom of Information Act.

For reasons not explained by FDA, the Agency stopped posting its jurisdictional decisions in 2009.  However, we have identified no examples of FDA invoking a "meaningfully contributes" standard.

While not citing any decisions to support its position, FDA continued to make what this Court characterized as "ephemeral distinction[s]" between DSW and the precedent products Prevor cites.[17]  FDA claimed that the medical maggots decision (RFD 2002.031), which FDA made available on this website to enhance "predictability and consistency," is not valid precedent because the Agency has "repeatedly distinguished" it.  Remand Resp. at 21, A.R. 859; Opp'n Br. at 30.  Yet not one of the publicly available RFDs reflects an attempt to distinguish medical maggots.  Nor did FDA provide any citations to support a single instance in which it has done so. *See* Remand Resp. at 21, A.R. 859; Opp'n Br. at 30.  And for the first time since Prevor submitted its RFD, the government's brief asserts a purported basis for distinguishing medical maggots: they are "living creatures."  Opp'n Br. at 30.  Not only is this another example of a *post hoc* rationalization, it simply is not a distinction that makes a difference under the statute.

---

[17]     The government claims that FDA had previously addressed the numerous other products identified by Prevor, and therefore "was not obliged to revisit them."  Opp'n Br. at 28 n.24.  But the government cites no statement by this Court in support of that proposition.  FDA cannot avoid evaluating relevant precedents by relying on an earlier decision that this Court found deficient.

Moreover, FDA ignored this Court's earlier findings about Reactive Skin Decontamination Lotion (RSDL) and remains unable to explain why DSW should not be regulated as a device like RSDL.[18]  In its analysis of RSDL, this Court found that the sponge in RSDL and the canister in DSW played "almost identical roles," and instructed FDA not to ignore the "necessary force of propulsion in washing off harmful chemicals."  *Prevor I*, 895 F. Supp. 2d at 100.  FDA's Remand Response failed to follow these instructions.  The government now asserts that FDA's RSDL decision may have been wrongly decided.  *See* Opp'n Br. at 32.  This is contrary to its defense of the RSDL decision in *Prevor I*.  *See, e.g.*, Def.'s Brief in Support of Summary Judgment at 25-26, 34, *Prevor I*, 895 F. Supp. 2d 90, ECF No. 13.

The government also makes arguments based on claims Prevor never made, such as the use of the DSW solution working alone without the canister.  Opp'n Br. at 31.  The government claims the RSDL sponge is different because it would be expected to remove chemicals from the skin without the lotion, whereas the DSW canister could not.  *See id.*  FDA provides no data to support this counterintuitive hypothesis.  Using a dry sponge on a chemical splash would likely serve to rub the chemicals *into* the skin, or at the very least keep them in contact with the skin, potentially exacerbating rather than preventing chemical burns.

FDA also claimed that RSDL is not relevant because "the applicable regulations have changed."  Remand Resp. at 20, A.R. 858; Opp'n Br. at 3 (citing *Apotex Inc. v. Food and Drug Admin.*, No. 06-0627, 2006 WL 1030151, at *13 (D.D.C. Apr. 19, 2006)).  In *Apotex*, however, FDA "explicitly rejected" the earlier method it used in favor of a new approach entirely, and FDA fully explained the reasoning for the changed methods in its Remand Response.  *Id.*  In

---

[18]    FDA implies Prevor "neglect[ed]" to disclose to this Court that the lotion in RSDL was deemed a drug, not a device.  *Id.* at 31.  But the fact that FDA regulated RSDL as a device, even though it was a drug-device combination product, only strengthens Prevor's position that DSW must be regulated as a device.

sharp contrast, the new regulations FDA referenced here were specifically *not* intended to reflect a change in law.  The preamble to those regulations makes explicit that the final rule "remains consistent with agency practice regarding the assignment of combination products.  This rulemaking will codify criteria the agency has generally used since 1990."  70 Fed. Reg. 49,848, 49,849 (Aug. 25, 2005).  Thus, the new regulations simply codified the analysis that FDA applied to RSDL, and did not reflect a change in law or practice.

## V.      FDA'S REMAND RESPONSE IS NOT ENTITLED TO DEFERENCE, AND THERE SHOULD BE NO SECOND REMAND.

Prevor earlier acknowledged that courts typically afford deference to an agency decision in complex scientific matters.  Prevor Br. at 22.  However, in its brief, Prevor discussed applicable precedent for cases in which an agency's decision should be given *no* deference by the reviewing courts.  *See* Prevor Br. at 22-25.  These cases involved circumstances in which:

- an agency's decision did not reflect fair and considered judgment;

- the new interpretation was a massive change in statutory interpretation;

- the interpretation was an "unfair surprise" to regulated industry;

- the interpretation conflicted with prior interpretations;

- the interpretation was a "convenient litigating position;"

- the interpretation exhibited circular logic;

- the interpretation articulated a new standard that is "so vague as to be meaningless;" and

- the interpretation was based on faulty assumptions and was unpersuasive.

*See id*.[19]  These factors fully support this Court not affording FDA deference here.

---

[19]      Prevor also notes one other recent case in which the court did not defer to FDA.  In *Cook v. Food and Drug Admin.*, 733 F.3d 1, 5 (D.C. Cir. 2013), the Court stated that it was not

The government's brief does not respond to Prevor's discussion on this subject.  Instead, the brief cites only to general deference principles of law.  Opp'n Br. at 11-12, 23-25.  In particular, the government relies on *Apotex Inc. v. Food and Drug Admin.*, No. 06-0627, 2006 WL 1030151 (D.D.C. Apr. 19, 2006). While it is true that that court afforded deference to FDA, FDA's remand decision in that case sharply differs from its Remand Response here.  First, FDA reached the opposite result on remand in *Apotex* from its earlier decisions, based on proper application of the courts' earlier findings.  In the decision remanding to FDA, the court ordered FDA to reconsider the Agency's earlier decision in light of earlier court findings.  This ruling was clearly heeded in FDA's decision on remand, in which FDA included a substantial discussion of the prior court rulings and demonstrated that its new decision was consistent with those rulings.  *See generally* Exhibit 1.  Second, the *Apotex* remand letter constituted a much more thorough, considered, and comprehensive analysis than the Agency had undertaken in the prior cases, as the court noted with approval in its opinion.  *See* 2006 WL 1030151, at *11. Third, the *Apotex* remand decision sufficiently addressed each of the three concerns raised by the court in its earlier decisions.  *See id.* at *16.

The juxtaposition to this case could hardly be more striking.  FDA did not take a different approach here on remand, or analyze the Court's findings that led to the remand.  The reasoned decision-making exhibited on remand in *Apotex* is patently absent here.

Further, the government claims FDA deserves deference because "[w]hether or not a primary intended purpose is 'achieved through' chemical action . . . is a scientific question, the answer to which would not always be obvious to a lay person.  Thus, FDA's interpretation directly involves scientific analysis."  Opp'n Br. at 13 n. 11.  Whether FDA applied a novel

---

showing FDA any special deference because the statute unambiguously imposed mandatory duties on FDA.

standard ("meaningfully contributes") without a well-reasoned explanation is not a scientific question.  Neither is the question of whether the administrative record supports FDA's decision to classify DSW as a drug.  Given FDA's creative construction of the statutory standard, its inconsistent interpretation of relevant precedents, its dismissal of the Court's findings, and its recasting of DSW from having two primary purposes to one, no deference is warranted.

Nor should there be another remand in which FDA is again asked to interpret and properly apply the law.  The D.C. Circuit has precluded second remands in similar situations, in which: (1) the agency had ample time to provide a reasoned explanation but had failed to do so; (2) the agency's remand decision arrived at substantially the same conclusion as the order previously remanded by the same court; (3) there was justifiable belief that an agency was so committed to a result that it would resist engaging in any genuine reconsideration; and (4) the agency's remand decision did not square with the ruling that precipitated the remand.  Prevor Br. at 26-28.

The government claims that the cases cited by Prevor weighing against a second remand do not apply here because they do not involve "fundamental questions of science and medicine that relate to the appropriate designation of products and which only FDA can answer."  Opp'n Br. at 35.  That is a mistaken view of the precedent cited by Prevor.  At least three of the cases Prevor cites involved FDA's assessment of "questions of science and medicine."  *See Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077 (D.C. Cir. 2001); *Tummino v. Torti*, 603 F. Supp. 2d 519 (E.D.N.Y. 2009); *Tummino v Hamburg*, 936 F. Supp. 2d 162 (E.D.N.Y. 2013).

The recent *Tummino v. Hamburg* decision is particularly relevant and instructive.  The court had earlier remanded the matter to FDA with an instruction to FDA to make products available without a prescription and without point of sale or age restrictions, and specifically

rejected FDA's request for a remand for rulemaking proceedings.  936 F. Supp. 2d at 197-98.

The *Tummino* court described FDA's intolerable delays as akin to "an administrative agency

filibuster."  *Id.* at 198.  "The plaintiffs should not be forced to endure, nor should the agency's

misconduct be rewarded by an exercise that permits the FDA to engage in further delay and

obstruction."  *Id.*; *see also Watson Labs., Inc. v. Sebelius*, No. 12-1344, 2012 WL 6968224

(D.D.C. Oct. 22, 2012) (overturning FDA's decision and ordering FDA to approve immediately

Watson's Abbreviated New Drug Application).

     The government cites *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 11-12 (D.C. Cir. 2006), to

support a second remand.  Opp'n Br. at 35.  But that decision does *not* state that if this Court

concludes that whenever any FDA remand decision is later deemed flawed, the court must

remand.  Also, that case, unlike here, dealt with what the court called "new problems."  Here,

FDA's Remand Response does not present new problems.  The Remand Response improperly

addressed the same issues (how to classify DSW), based on the same problem with FDA's

flawed interpretation of the device exclusionary clause.  Finally, the procedural posture of

*Alpharma* was considerably different.  The D.C. Circuit ruled that it was remanding the case to

FDA while allowing the FDA approval at issue to stand because no significant harm would result

from allowing the approval to remain in effect pending the Agency's further explanation.  The

court reasoned that the parties were not concerned about the length of time it had taken to litigate

the case.  460 F.3d at 12.

     In contrast, any additional delay in reviewing DSW as a device product would adversely

affect both Prevor and the public interest.  As demonstrated in the brief of *amici curiae*, the delay

in availability of DSW has serious adverse effects; it is creating a health risk for American

workers.  *See* Brief of *Amici Curiae* Alcoa, Inc. and the United Steel Workers at 9-12, *Prevor v.*

*Food and Drug Admin.*, No. 13-cv-01177 (Dec. 20, 2013), ECF No. 21. Directing a second remand – even with time limits – will result in unwarranted delay.

Further, Prevor is not asking this Court to decide issues of safety and efficacy. If this Court grants the relief Prevor is seeking, it only results in designating CDRH as the Center that will be charged with reviewing the questions of safety and effectiveness. It will be up to FDA to evaluate whether Prevor's product should be approved or cleared for marketing as a device when FDA reviews the Prevor marketing application.

## VI.     THE STATUTE DOES NOT CONFER SOLE AUTHORITY ON FDA TO DESIGNATE PRODUCTS.

FDA asserts that this Court does not have the authority to designate a product classification because it cannot make a *sua sponte* determination to approve a drug or clear a device for marketing. Opp'n Br. at 34 (citing 21 U.S.C. §§ 393(b)(2)(B), (C), 360bbb-2). FDA also asserts that a designation question is the sole province of FDA, thereby excluding this Court from any role in that process. Opp'n Br. at 34. These statements reflect a fundamental misunderstanding of the FDC Act and of the role of judicial review of administrative agency decisions.

First, Prevor is not seeking a "*sua sponte*" decision by this Court. Prevor has spent years seeking a ruling from FDA both before and after this Court's remand order. Because FDA has failed to properly carry out its role in the classification process, Prevor has turned to the only other alternative, namely, asking this Court to apply the language in the FDC Act and declare that DSW is a device.[20]

---

[20]     We note that the Proposed Order Prevor submitted would not ask this Court to directly regulate DSW as a device. Instead, Prevor properly asks this Court to enter an order requiring FDA to issue a decision to regulate DSW as a device within thirty days after the Order is issued.

Neither of the two statutory provisions cited by FDA says anything about this Court's role in the RFD process.[21]  Indeed, the absence of any applicable statutory provision prohibiting this Court from granting the relief sought by Prevor is further evidence that the Court has authority to do so.[22]

Moreover, FDA conveniently overlooks the key statute at issue here: the FDC Act definition of the term "device."  21 U.S.C. 321(h).  This provision does not mention FDA or the role that FDA will play in defining the term "device," nor does it preclude courts from making such determinations.

FDA's approach is directly contrary to numerous court cases.  For instance, in *United States v. Western Serum Co., Inc.*, 666 F.2d 335 (9th Cir. 1982), the government sought to enjoin defendants from selling any drug until FDA had approved a new drug application.  Western Serum complained that, as a matter of primary jurisdiction, FDA had to hold a hearing and conclude the product was a new drug before the government could seek an injunction to block sales of the product.  FDA argued that *the court* should make this product classification decision on its own, without any prior FDA determination.  The court accepted FDA's argument that the primary jurisdiction doctrine did not apply and ruled that defendants' products were "new

---

[21]    Section 360bbb-2 sets forth the administrative mechanism for the review of a sponsor's proposed classification.  Sections 393(b)(2)(B) and (C) simply give FDA the responsibility to ensure that drugs and devices are safe and effective, and thus are irrelevant here.  Those provisions say nothing about a court's role when the agency is alleged to have misclassified a product.

[22]    This Court should assume that Congress would not deprive it of its equitable powers without clearly expressing the intent to do so.  *See Scripps-Howard Radio, Inc. v. Fed. Commc'ns Comm'n*, 316 U.S. 4, 11, 15 (1942) (recognizing that a court called upon to review administrative action has broad equitable authority to order relief "unless Congress has chosen to withdraw it," and that such a desire should not be "lightly attribute[d]" to Congress).

drugs." *See also United States v. Generix Drug Corp.*, 460 U.S. 453 (1983) (ruling that the term "drug" in the FDC Act referred to the entire product, and not just the active ingredient); *United States v. Undetermined No. of Unlabeled Cases*, 21 F.3d 1026 (10th Cir. 1994) (ruling that the products at issue were devices).

In *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000), the Supreme Court was asked to determine whether certain tobacco products were subject to FDA regulation.  FDA had determined that nicotine was a drug, that cigarettes and smokeless tobacco were drug delivery devices, and that cigarettes and smokeless tobacco were "combination products."  *See id.* at 125-26.  The Fourth Circuit rejected FDA's analysis, and ruled that FDA lacked jurisdiction to regulate the products.  The U.S. Supreme Court agreed, ruling that the FDC Act precluded FDA's jurisdiction to regulate tobacco products, and rejecting FDA's determination that the products met the statutory definitions of "drug" or "device."

Indeed, it is difficult to reconcile FDA's position here with its position in *United States v. Regenerative Sci., L.L.C.*, 878 F. Supp. 2d 248 (D.D.C. 2012).  In that case, this Court requested briefing on the statutory "device" and "drug" definitions to determine whether to restrict the definition of "drug."  In its response, the United States never questioned this Court's authority to classify the product at issue.[23]  *See generally* Government's Response to Order to Show Cause, *Regenerative Sci.,* 878 F. Supp. 2d 248, ECF No. 43.  Thus, on July 23, 2012, this Court made the product classification on its own.  *See* Order of Permanent Injunction at 1, *Regenerative Sci.,* 878 F. Supp. 2d 248,  ECF No. 48 (stating that the ruling was based on "having found that the cultured cell product is a drug").  There is no indication that the government opposed that finding or questioned this Court's authority to make that finding.

---

[23]     It also stated FDA's general rule that "[i]f a product is shown to meet both the drug and device definitions, the Agency generally classifies the product as a device." *Id*. at 3 n.2.

## VII.   **DSW IS A DEVICE.**

This Court can and should rule that DSW is a device.  The only component of the product that needs evaluation by this Court is the solution; the canister is indisputably a device.  And the only dispute about the solution is whether it "does not achieve its primary intended purposes through chemical action within or on the body of man or other animals."  Prevor has shown that DSW does not, based on the language of the FDC Act, a view supported by decades of interpretation by FDA.  FDA says that it does, but only after it contorts the statutory language, defies precedent, and relies on extra-record materials to fashion that result.

Even if this Court accepts FDA's post-*Prevor I* modification of the product's primary intended purpose to be singular ("to help prevent and minimize chemical burn injuries"), there is no real dispute that the physical action (displacement of the water) achieves the primary intended purpose.  *See* Prevor Br. at 6.  FDA does not dispute, and indeed acknowledges, this point. Remand Resp. at 5, A.R. 843 ("the product appears to achieve this purpose through several actions, including neutralizing and washing away chemicals").

The only question is whether the product's *chemical action* (neutralization of residual chemicals left on the skin) achieves the primary intended purpose.[24]  Prevor has consistently stated that neutralization is a secondary benefit of the product, and relevant only after the physical action already has achieved the product's purpose of preventing and minimizing

---

[24]     Although FDA's decision would be erroneous regardless of whether hypertonicity is physical or chemical, FDA is wrong that the hypertonic property of DSW is evidence of chemical action.  *See, e.g.*, Remand Resp. at 9, A.R. 847; *but see id.* at 9-10, A.R. 847-48 (describing the hypertonic property as a barrier because it prevents corrosives and irritants from penetrating the skin).  Hypertonic simply means that the solution has higher osmotic pressure than its surrounding fluid; it describes a physical characteristic of liquid when compared to another liquid.  *See* Merriam-Webster.com: Hypertonic, http://www.merriam-webster.com/dictionary/hypertonic (last visited Jan. 17, 2014). Thus, DSW solution's hypertonic property *moves* or *blocks* the fluid surrounding it, but does not chemically react with that fluid.

26

chemical burn injuries.  A.R. 001, 679.  Prevor submitted studies demonstrating that the physical displacement of chemicals is predominant.  A.R. 001-014.

FDA now questions the studies Prevor submitted, but provides no data to support a contrary finding.  Moreover, FDA's "analysis" of the studies misguidedly focuses on the mere existence of chemical action, and is divorced an element critical to DSW's primary intended purpose: the time to achieve its effect.  DSW is intended as an immediate first response.  *See* Brief of *Amici Curiae* Alcoa, Inc. and the United Steel Workers at 9-12, *Prevor v. Food and Drug Admin.*, No. 13-cv-01177 (Dec. 20, 2013), ECF No. 21 (stating that time is of the essence in obtaining DSW to protect workers).  The ability to eventually neutralize chemicals from the skin does not achieve the product's primary intended purpose.  Strikingly, FDA's conclusion that chemical action "meaningfully contributes" to the primary intended purpose never considers that that intended purpose is dependent on immediate effect, or analyzes how long it will take for the neutralization action to have any effect.[25]

FDA's bald assertion that DSW achieves its primary intended purpose through chemical action suffers from the same fatal flaw the Court found in FDA's earlier decision: it is based on FDA's mere say-so.  *Prevor I*, 895 F. Supp. 2d at 99.  FDA cited no actual data to rebut Prevor's conclusions about the predominance of DSW's physical action over its chemical action.  And FDA wants to simply dismiss the long-standing requisite analysis of relative contributions of physical versus chemical action to achieve the primary intended purposes.  Opp'n Br. at 22.

---

[25]     Underscoring the importance of considering this temporal aspect, Prevor's RFD demonstrated that without physical displacement, *i.e.* the washing away of the chemical, it would take 33 times more DSW to neutralize the chemical substance.  A.R. 006.  It would obviously take much more time to accomplish that action, a factor that FDA's Remand Response overlooked in saying that DSW achieves its primary intended purpose through chemical action.

If relative contributions were not relevant, than why did FDA ask Prevor for clarification about "how the contribution of this [dilution] effect was measured and determined"?  A.R. 015. If relative contributions were not relevant, then why were they considered and discussed throughout FDA's review?  *See, e.g.*, A.R. 041 ("For the most part, these studies [which were not submitted with the RFD] do not measure or specifically address the relative contribution of each mode of action of the product."); A.R. 058 (describing a 10% effect due to chemical action as "very minor").  The obvious answer is that until FDA's newly concocted "meaningfully contributes" test, relative contributions have been critical to the analysis of whether a product achieves its primary intended purposes through chemical action.

The only way FDA could reach the conclusion in the Remand Response was to again craft new language that lowers the standard for excluding products from the definition of "device."  As discussed in Section III, this is not the appropriate standard.  Without this new "meaningfully contributes" test, the remainder of FDA's argument that DSW is a drug falls like a house of cards because there is nothing to show that the solution "achieves" its primary intended purposes through chemical action.

## VIII.   <u>CONCLUSION</u>

For the foregoing reasons, and as set forth in Prevor's Opening Brief, this Court should

grant summary judgment to Prevor and declare that DSW is a device that must be regulated by

FDA's Center for Devices and Radiological Health.

Dated:  January 17, 2014                    Respectfully submitted,

                                            PREVOR

                            By:   /s/ Anne K. Walsh
                                  Jeffrey N. Gibbs (D.C. Bar No. 385294)
                                  John R. Fleder (D.C. Bar No. 176123)
                                  Anne K. Walsh (D.C. Bar No. 464858)
                                  Jennifer M. Thomas (D.C. Bar No. 987518)
                                  Hyman, Phelps & McNamara, P.C.
                                  700 13th Street, N.W., Suite 1200
                                  Washington, D.C.  20005
                                  Phone: (202) 737-5600
                                  Fax: (202) 737-9329

                                  *Attorneys for Plaintiff*